**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NBA PROPERTIES, INC.,

                Plaintiff,

v.

THE PARTNERSHIPS and
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

                Defendants.

Case No. 24-cv-12574

## COMPLAINT

Plaintiff NBA Properties, Inc. ("NBAP" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (collectively, the "Seller Aliases"). Specifically, Defendants have

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold and continue to sell products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3.     This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of one or more of the trademarks owned and/or licensed by Plaintiff (the "Counterfeit NBA Products"). Plaintiff is a member of the Coalition to Advance the Protection of Sports logos ("CAPS"), which is administered by Trademark Management LLC ("TML"). In collaboration with CAPS, Plaintiff has established a comprehensive program of trademark protection and enforcement. In particular, CAPS has created an extensive anti-counterfeiting program for Plaintiff, which includes regularly investigating suspicious e-commerce stores and enforcing Plaintiff's trademark rights to prevent the sale of Counterfeit NBA Products.

4.     Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit NBA Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and demonstrating that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or

2

occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operations. Plaintiff has filed this action to combat Defendants' counterfeiting of the trademarks owned or licensed by Plaintiff, as well as to protect unknowing consumers from purchasing Counterfeit NBA Products over the Internet. Plaintiff has been irreparably harmed and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**NBA Properties, Inc.**

5.      Plaintiff NBAP is a corporation duly organized and existing under the laws of the State of New York with its principal place of business at 645 Fifth Avenue, New York, New York.

6.      The National Basketball Association ("NBA") is an unincorporated association and professional basketball league, comprised of thirty (30) member teams ("NBA Teams"), including the Chicago Bulls, that provide professional basketball entertainment services and that collectively own NBAP. NBAP manages trademark affairs, including licensing and enforcement, for the NBA and NBA Teams.

7.      NBAP is the owner and/or the exclusive licensee of the famous and distinctive trademarks of the NBA and the NBA Teams, and is authorized to enforce the rights in those trademarks. NBAP commercially exploits, protects and enforces rights in the famous and distinctive trademarks, names, logos, symbols, emblems, uniform designs, uniform trade dress colors, and other identifying indicia associated with the NBA and the NBA Teams (collectively, the "NBA Trademarks"), including, but not limited to, those that are the subject of valid and subsisting trademark registrations on the Principal Register of the United States Patent and

3

Trademark Office and those that NBAP and the NBA Teams have adopted and used in commerce throughout the United States, including in Illinois. NBAP owns more than one hundred fifty (150) United States Federal Trademark Registrations in a variety of classes and for a variety of different goods and services, including, without limitation, many for apparel, such as jerseys, shirts, caps, and other products in international class 25. Among the NBA Trademarks owned by NBAP and registered before the United States Patent and Trademark Office are the word mark "NBA" (reg. no. 1,833,902) and the NBA Player Silhouette Logo:  (reg. no. 1,966,924). A partial list of the famous and distinctive NBA Trademarks owned and/or licensed by NBAP, registered before the United States Patent and Trademark Office, and currently in use in commerce includes the following:

| Registration Number | Trademark |
|---|---|
| 1,833,902 | NBA |
| 2,183,983 | NATIONAL BASKETBALL ASSOCIATION |
| 1,525,782 |  |
| 1,715,549 |  |

| | |
|---|---|
| 1,966,924<br>2,553,039 |  |
| 2,157,039 |  |
| 2,079,493 |  |
| 4,647,908<br>4,694,245 |  |
| 5,237,767 |  |
| 5,277,152 |  |

| | |
|---|---|
| 5,984,709 |  |
| 1,946,924 | ATLANTA HAWKS |
| 4,778,504<br>4,878,154 |  |
| 1,003,131 | BOSTON CELTICS |
| 1,806,185 |  |
| 4,175,932 | BROOKLYN NETS |
| 4,264,484 |  |
| 1,650,195 | CHARLOTTE HORNETS |
| 4,784,171 |  |
| 1,836,873<br>5,937,290 | BULLS |
| 4,501,347<br>5,891,420 |  |
| 3,028,591 | CLEVELAND CAVALIERS |
| 2,983,889 |  |

| | |
|---|---|
| 5,891,612 |  |
| 3,100,138 | DALLAS MAVERICKS |
| 2,754,325 |  |
| 3,078,918 | DENVER NUGGETS |
| 3,607,613<br>5,829,919 |  |
| 3,023,617 | DETROIT PISTONS |
| 1,598,692 |  |
| 6,373,210 |  |
| 3,718,639 | GOLDEN STATE WARRIORS |
| 4,023,727<br>5,633,075 |  |
| 6,639,671 |  |
| 3,235,838<br>6,428,862 | HOUSTON ROCKETS |
| 2,931,889 |  |

| | |
|---|---|
| 6,196,185 |  |
| 3,100,157 | INDIANA PACERS |
| 1,981,366<br>5,973,491 |  |
| 3,035,417 | LOS ANGELES CLIPPERS |
| 5,120,178<br>5,105,793 |  |
| 3,095,079<br>6,845,863 | LOS ANGELES LAKERS |
| 3,095,083<br>6,845,862 |  |
| 6,595,824 |  |
| 2,861,210 | MEMPHIS GRIZZLIES |
| 3,056,500 |  |
| 2,179,772 | MIAMI HEAT |
| 1,962,650<br>6,266,236 |  |
| 3,081,981 | MILWAUKEE BUCKS |
| 5,087,429 |  |

| | |
|---|---|
| 6,222,076 |  |
| 1,513,653 | MINNESOTA TIMBERWOLVES |
| 5,414,453 5,576,693 |  |
| 4,632,955 | NEW ORLEANS PELICANS |
| 4,795,620 4,708,721 |  |
| 3,035,311 | NEW YORK KNICKS |
| 4,099,180 |  |
| 3,958,194 | OKLAHOMA CITY THUNDER |
| 4,257,744 |  |
| 1,528,345 | ORLANDO MAGIC |
| 2,571,959 |  |
| 3,285,491 | PHILADELPHIA 76ERS |
| 5,649,497 |  |
| 5,142,409 |  |
| 3,045,529 | PHOENIX SUNS |
| 1,882,292 |  |

| | |
|---|---|
| 3,100,140 | PORTLAND TRAIL BLAZERS |
| 3,826,994 |  |
| 5,807,372 |  |
| 3,097,485 | SACREMENTO KINGS |
| 5,413,489 |  |
| 3,235,836 | SAN ANTONIO SPURS |
| 2,834,622 |  |
| 2,322,650 | TORONTO RAPTORS |
| 7,196,458 |  |
| 7,262,315 |  |
| 3,084,689 | UTAH JAZZ |
| 1,978,656 |  |
| 5,581,260 |  |
| 2,219,219 | WASHINGTON WIZARDS |
| 4,280,347<br>4,947,790 |  |

The above U.S. registrations for the NBA Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the NBA Trademarks constitute *prima facie* evidence of their validity and of NBAP's exclusive right to use the NBA Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the Federal Trademark Registrations for the above NBA Trademarks are attached hereto as **Exhibit 1**.

8. The NBA brand of professional basketball and NBA Trademarks are widely known to and enormously popular with both sports fans and the general public. NBAP has promoted and advertised the NBA, the NBA Teams and NBA Trademarks extensively for many years. NBA Trademarks are among the most renowned and immediately recognizable marks in professional sports today. As a result of substantial advertising, promotion and media attention, and NBAP's extensive licensing and sponsorship program for a wide variety of goods and services, NBA Trademarks have acquired secondary meaning and represent significant goodwill of great value to NBAP, the NBA and the NBA Teams.

9. Hundreds of millions of fans have attended NBA games and related events, enjoyed television and radio broadcasts of NBA games and related events, and purchased merchandise bearing NBA Trademarks to identify with their favorite NBA Teams. Millions visit <NBA.com>, the official NBA website, as well as the official websites of the individual NBA Teams, which prominently display, and in many cases are accessed by domain names containing, NBA Trademarks.

10. A significant aspect of NBAP's business and resulting revenues has been for many years, and continues to be, the merchandising and licensing of NBA Trademarks. NBAP has entered into numerous licensing agreements in the United States and around the world, authorizing use of NBA Trademarks on a wide variety of products, including apparel, caps, jewelry, toys,

furniture, pennants, and bags, among others (collectively, "NBA Products"). Retail sales of NBA Products exceeded $3 billion in 2023.

11. NBAP, directly and through authorized licensees, has established and maintains high standards of quality for NBA Products, and continues to maintain stringent quality control over licensees and other authorized users of NBA Trademarks.

12. In supervising licensees, NBAP provides licensees and licensed product manufacturers with specifications setting forth extensive details with respect to use of NBA Trademarks, including typeface and typography, color renderings, official uniform scripts, graphic designs, materials, workmanship, and quality. All NBA Products are reviewed under these strict quality control procedures.

13. As a result of the extensive use of NBA Trademarks, not only in connection with the NBA's well-known basketball games and related events, but also in connection with a wide variety of licensed merchandise promoted, sold and/or rendered in the United States and abroad, as well as widespread use in connection with a broad array of sponsorship activities spanning diverse industries, such trademarks have for many decades, and long prior to any use made by Defendants, functioned as unique identifiers and synonyms in the public mind for NBAP, the NBA, and the NBA Teams. As a result, NBA Trademarks are famous and possess significant goodwill of great value to NBAP, the NBA and the NBA Teams.

14. To protect NBA Trademarks from infringement, dilution, disparagement, and misappropriation, NBAP, in collaboration with CAPS, has established a comprehensive program of trademark protection, including, among other things, regularly investigating suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.

**The Defendants**

15.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their operations make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network.  If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17.     The fame of NBA Trademarks and the success of Plaintiff's athletic brand and affiliated variety of products, including apparel, caps, jewelry, toys, furniture, pennants, and bags, among others (collectively, "Genuine NBA Products"), has resulted in significant counterfeiting of NBA Trademarks.  TML administers CAPS on behalf of its members, including Plaintiff NBAP. CAPS has created an extensive anti-counterfeiting program, which includes regularly investigating suspicious e-commerce stores identified in proactive Internet sweeps and reported by a variety of informants in response to the significant counterfeiting of NBA Trademarks.  In recent years, CAPS, on behalf of its members, has identified numerous fully interactive e-commerce stores including those operating under the Seller Aliases.  The Seller Aliases target consumers in this

Judicial District and throughout the United States. According to a U.S. Customs and Border Protection (CBP), report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020.[2] Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong.[3]

18.     Counterfeiters "routinely use false or inaccurate names and addresses when registering with these Internet platforms," that do not require sellers to verify their identities.[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

19.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from

---

[2] *See Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection.
[3] *Id.*
[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.
[5] *Id.* at p. 22.
[6] *Id.* at p. 39.
[7] Chow, *supra* note 3, at p. 186-87.

U.S. bank accounts, and, on information and belief, have sold Counterfeit NBA Products to residents of Illinois.

20.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales of Counterfeit NBA Products by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers, including, in many instances, by copying the layouts, terms of service, legal notices and/or contact information found on the websites of Plaintiff's authorized online retailers.  E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  On information and belief, Plaintiff has not licensed or authorized Defendants to use any of the NBA Trademarks, and none of the Defendants are authorized retailers of Genuine NBA Products.

21.     Many Defendants also deceive unknowing consumers by using one or more NBA Trademarks without authorization within the content, text, and/or meta-tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Genuine NBA Products.  Other e-commerce stores operating under Seller Aliases omit using NBA Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Genuine NBA Products.  On information and belief, those Defendants that do not use NBA Trademarks in searchable text do so in an effort to avoid detection of their Counterfeit NBA Products.

22.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent one from learning their true identities and the scope of their e-commerce operation.

23.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit NBA Products.  Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

24.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use.  E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images.  Additionally, Counterfeit NBA Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit NBA Products were manufactured by and come from a common source and that Defendants are interrelated.

25.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as

sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

26.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

27.     Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit NBA Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use one or more NBA Trademarks in connection with the advertisement, distribution, offering for sale, and/or sale of the Counterfeit NBA Products into the United States and Illinois over the Internet.

28.     Defendants' unauthorized use of one or more NBA Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit NBA Products, including into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

29.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

30.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit or infringing imitations of one or more NBA Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  NBA Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Genuine NBA Products sold or marketed under NBA Trademarks.

31.     Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing and advertising products using counterfeit or infringing reproductions of one or more NBA Trademarks without Plaintiff's permission or consent.

32.     Plaintiff is the owner and/or the exclusive licensee of the NBA Trademarks.  The U.S. Registrations for NBA Trademarks (Exhibit 1) are in full force and effect.  On information and belief, Defendants have knowledge of Plaintiff's rights in the NBA Trademarks, and are willfully infringing and intentionally using counterfeits or infringements of one or more NBA Trademarks.  Defendants' willful, intentional and unauthorized use of one or more NBA Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit or infringing goods among the general public.

33.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known NBA Trademarks.

35.     The injuries and damages sustained by Plaintiff have been directly and/or proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and/or sale of the Counterfeit NBA Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

37.     Defendants' promotion, marketing, offering for sale, and/or sale of the Counterfeit NBA Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' Counterfeit NBA Products by Plaintiff.

38.     By using one or more NBA Trademarks on the Counterfeit NBA Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit NBA Products.

39.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit NBA Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

40.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of Plaintiff and its NBA Trademarks.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

   a. using any NBA Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, promotion, marketing, advertising, offering for sale, or sale of any product that is not a Genuine NBA Product or is not authorized by Plaintiff to be sold in connection with NBA Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any products as Genuine NBA Products or any other products produced by Plaintiff that are not Plaintiff's, or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under NBA Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit NBA Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d. further infringing NBA Trademarks and damaging Plaintiff's goodwill; and

   e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or

offered for sale, and which bear any of Plaintiff's trademarks, including the NBA Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Walmart, Etsy, Wish.com, Temu, DHgate, and TikTok (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using NBA Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that the amount of damages for infringement of NBA Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of NBA Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 6th day of December 2024.    Respectfully submitted,

    /s/ Justin R. Gaudio_____
    Amy C. Ziegler
    Justin R. Gaudio
    Allyson M. Martin
    Kahlia R. Halpern
    Greer, Burns & Crain, Ltd.
    200 West Madison Street, Suite 2100
    Chicago, Illinois 60606
    312.360.0080
    312.360.9315 (facsimile)
    aziegler@gbc.law
    jgaudio@gbc.law
    amartin@gbc.law
    khalpern@gbc.law

    *Attorneys for Plaintiff NBA Properties, Inc.*